IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ANGELA CONNOLLY; DR. NICHOLAS
CONNOLLY; A.C., a minor, by and through
his guardian ad litem, Angela Connolly,

                Plaintiffs,

        v.

CITY OF BEND; OFFICER JEREMY AVERY;
DR. CLAYTON GARTHE; CENTRAL
OREGON EMERGENCY PHYSICIANS LLC;
ST. CHARLES HEALTH SYSTEMS, INC.;
CORPORAL JARED WIEBOLD; DOES 1–10,

                Defendants.

Civ. No. 6:25-cv-01341-AA

**OPINION & ORDER**

AIKEN, District Judge:

      Plaintiffs Angela Connolly, Dr. Nicholas Connolly, and their minor son, A.C., bring federal claims under 42 U.S.C. § 1983 and state-law claims against Defendants City of Bend, Officer Jeremy Avery, Dr. Clayton Garthe, Central Oregon Emergency Physicians LLC, St. Charles Health Systems, Inc., Corporal Jared Wiebold, and Does 1–10. *See* Compl., ECF No. 1. Before the Court is Defendants Dr. Clayton Garthe and Central Oregon Emergency Physicians LLC's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Garthe Mot., ECF No. 32. Also before the Court is Defendants St. Charles Health Systems, Inc.'s and Does 1–10's Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Page 1 – OPINION & ORDER

*See* St. Charles Mot., ECF No. 30.  For the reasons explained below, Defendants' Motions, ECF Nos. 30 and 32, are GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs allege that, on December 5, 2023, Plaintiff Angela Connolly and her 19-month-old son, A.C., went to the East Bend branch of Deschutes County Public Library.  Compl. ¶¶ 12, 44.  While there, A.C. was playing in a preschool play area and stood up "on a foam block trying to reach [a] ball and a funnel toy." *Id.*  The foam block "tipped causing A.C. to fall and strike his face against a wooden bin." *Id.*  Plaintiffs allege that Mrs. Connolly then sent a text with photos to Dr. Connolly "to obtain his medical opinion of whether Mrs. Connolly needed to take A.C. to the doctor." *Id.*  "The message was date and time-stamped Tuesday, 12/5/23 at 11:19 AM." *Id.*  Plaintiffs allege that the photos show the foam block at the library and "A.C.'s eye where he was at the play center, and the right side of his face was red and starting to swell as if just injured." *Id.*  Plaintiffs allege that "Dr. Connolly viewed the photos and saw that [the injury] was going to leave a bruise," but because "the orbital cavity did not appear injured, and the eye was not struck[,]" "Dr. Connolly did not feel it was necessary to take A.C. to the doctor."

Plaintiffs allege that on December 15, 2023, at about 11:30 am, Holli Carlson, Oregon Department of Human Services ("DHS") caseworker, received a report about A.C. from Grace Nelson, a schoolteacher and a mandatory reporter. *Id.* ¶¶ 13–15. Ms. Nelson reported that during the school's Christmas program the previous night,

Page 2 – OPINION & ORDER

"a young male, approximately 1 to 2 years old was seen with a huge black eye on his right eye." *Id.* ¶ 15.

Plaintiffs allege that, on December 15, 2023, at about 4:15 pm, Defendant Bend Police Officer Jeremy Avery was assigned to investigate the Connolly family. *Id.* ¶ 18–19. Officer Avery contacted Dr. Connolly to ask "if he could come by the Connolly house and talk to the children[,]" but he could not reach Mrs. Connolly, who was with the children. *Id.* ¶¶ 18–20.   Plaintiffs allege that Officer Avery went to the Connolly house later that evening, but the parents were away, and that Officer Avery spoke to their second oldest child, [K.C.], who told him that she was babysitting the other children while her mother was at Juniper Fitness Center.  *Id.* ¶ 21.  While Officer Avery was at the door, "A.C. came to the door" and that "Officer Avery's report states Officer Avery observed that A.C. had some small, discolored bruising around his right eye consistent with a black eye . . . in the process of healing" but that "Officer Avery did not photograph A.C." *Id.* ¶ 22.

On December 16, 2023, Officer Avery again contacted Dr. Connolly and stated that "because there was bruising to A.C.'s face, he would need to go into the hospital and have a Karly's Law exam completed[.]"[1] *Id.* ¶ 23. Dr. Connolly "immediately provided a thorough history of A.C.'s injury" and told Officer Avery that "there were

---

[1] Karly's Law provides that if a person "conducting an investigation" for child abuse "observes a child who has suffered suspicious physical injury and the person is certain or has a reasonable suspicion that the injury is or may be the result of abuse, the person shall . . . (A) Immediately photograph . . . the suspicious physical injuries . . . and (B) Ensure that a designated medical professional conducts a medical assessment within 48 hours, or sooner if dictated by the child's medical needs." ORS 419B.023(2)(a).

photos and text messages from the time of that injury corroborating Dr. Connolly and his wife's account of the injury[.]" *Id.* ¶ 24. Officer Avery told Dr. Connolly that "according to Karly's Law, an injury to a child who cannot speak for themselves must be evaluated by the designated medical provider[,]" and that "the Designated Medical Professional" in Bend was the St. Charles Medical Center Emergency Department. *Id.* ¶ 26.

Plaintiffs allege that "[t]he designated medical center is the Kids Center in Bend[,]"where "professionals are specifically trained to do Karly's Law exams" and "[n]o x-rays or CT scans are performed[.]" *Id.* ¶ 25.

Dr. Connolly asked that A.C. "be allowed to be evaluated by a pediatrician" but Officer Avery "refus[ed] to accept that." *Id.* ¶¶ 26, 28. Officer Avery "ordered Dr. Connolly to take A.C. to the Emergency Department . . . within 23 hours" because he said it "was required under Oregon law[.]" *Id.* ¶¶ 27, 28. "Dr. Connolly expressed his feeling that the family was being denied the reasonable option of going to the Kid's Center or a pediatrician to have A.C. evaluated[,]" *id.* ¶ 28, but that "[u]nder protest, [he] relented and stated he would get it done[,]" *id.* ¶ 29.

On December 17, 2023, "Dr. Connolly sent Officer Avery a text message which showed the text messages between Dr. Connolly and Mrs. Connolly when A.C. received the bruise to his face[.]" *Id.* ¶ 30, Officer Avery "still commanded the Connollys to take A.C. to the Emergency Department for a Karly's Law investigative medical examination without a warrant[.]" *Id.* ¶ 31.

Page 4 – OPINION & ORDER

On December 17, 2023, Mrs. Connolly took A.C. to the St. Charles Emergency Department. *Id.* ¶ 33. Officer Avery arrived and took a photo of A.C.'s face but "then got closer to A.C.'s face, a few inches in front of his right eye, to take another picture since the bruise was hardly noticeable[.]" *Id.* ¶ 34.  Officer Avery stated he had not taken any earlier photos of A.C. because "he didn't want to traumatize the Connolly children."  *Id.*  "Officer Avery proceeded to interrogate Mrs. Connolly for several minutes in the ER waiting room." *Id.* ¶ 35.

Mrs. Connolly was escorted to an exam room where she met Defendant Dr. Clayton Garthe. *Id.* ¶¶ 35–36. Mrs. Connolly showed Dr. Garthe the photos and text messages that "provided evidence of the accidental origin of the injury[.]" *Id.* ¶ 36. Mrs. Connolly explained that the Karly's Law exam criteria of reasonable suspicion had not been met but "Dr. Garthe . . . proceeded with a CT scan and full-body X-rays without obtaining Plaintiffs' informed consent[.]" *Id.* ¶ 37.  Dr. Garthe "wrote that Mrs. Connolly came here to the ER 'at the order of police.'" *Id.* ¶ 38.

"Dr. Garthe ordered imaging of A.C. despite A.C. having none of the 6 clinical predictors of [clinical traumatic brain injury]."  *Id.* ¶ 39.  When Mrs. Connolly objected, Dr. Garthe stated that "he needed to review the protocol and adhere to it." *Id* ¶ 40.  Dr. Garth added that "the train had left the station[.]" *Id.* ¶ 39. "Mrs. Connolly opposed the entire examination including the CT scan and x-rays." *Id.* ¶ 40. A.C. fought and screamed for over 15 minutes while "Doe Defendants immobilized his body in a blanket straight jacket and wrapped tape-wrap around his forehead to the board multiple times." *Id.* ¶ 42.

Mrs. Connolly tried "to intervene to stop the [CT] scan and retrieve her son," but was blocked by one of the staffers, Doe 1. *Id.* ¶ 42. For the x-rays, Mrs. Connolly "was escorted away and told she had to wait in the waiting room" and "was not permitted to observe or be with A.C. during the 15–20 minutes it took to do the x-rays[,]" *Id.* ¶ 43.

Plaintiffs allege that "[t]he CT scan . . . subjected Plaintiff A.C. to approximately 2.8 millisieverts (mSv) of radiation, and the full-body X-rays subjected the child to an additional 0.2 mSv" and "Dr. Garthe and Does 1–10 failed to adjust the radiation dose for pediatric use, applying adult-level exposure to a 19-month-old child." *Id.* ¶ 44.

After the imaging procedures, Mrs. Connolly was told that she and A.C. "were not allowed to leave the facility until the results of the imaging tests were received[.]" *Id.* ¶ 46. Dr. Connolly arrived after finishing his work in the hospital, and they waited together. *Id.* ¶ 47.

Officer Avery then left the hospital. Plaintiffs allege that, "[i]n his police report, [he] stated that after the exam and speaking with the family, he did not see anything criminal," that "there was a 'solid explanation' for A.C.'s black eye and the parents have it documented in messages and photos," and that "the matter did not need to be investigated further." *Id.* ¶ 45.

## LEGAL STANDARDS

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* (internal quotation marks and citation omitted).

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Plaintiffs bring federal and state claims against Defendants Dr. Clayton Garthe and his employer, Central Oregon Emergency Physicians LLC ("COEP"), and against Does 1–10 and their employer, St. Charles Health Systems, Inc. ("St. Charles"). Dr. Garthe and COEP move to dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Garthe Mot.; Fed. R. Civ. P. 12(b)(6). St. Charles and Does 1–10 also move to dismiss the Complaint for

Page 7 – OPINION & ORDER

failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).  *See* St. Charles Mot.; Fed. R. Civ. P. 12(b)(6), 12(b)(1).

I.      *Dr. Garthe and COEP*

Plaintiffs bring three § 1983 claims against Dr. Garthe and seven state-law claims against Dr. Garthe and his employer, COEP.

A.      *Section 1983 Claims against Dr. Garthe*

Plaintiffs allege that by conducting an invasive physical examination of A.C. absent exigency, consent, or court order, Dr. Garthe violated A.C.'s Fourth Amendment protection against unreasonable search and seizure (First Claim), A.C.'s and his parents' substantive Fourteenth Amendment right of familial association (Second Claim), and A.C.'s and his parents' right to procedural due process (Third Claim).  Dr. Garthe moves to dismiss the § 1983 claims against him.

Section 1983 does not create substantive rights but instead "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States."  Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) they were "depriv[ed] of a right secured by the federal Constitution or statutory law," and (2) that "the deprivation was committed by a person acting under color of state law."  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

1.     *State Action*

A § 1983 claim requires that the alleged deprivation be committed by a person acting under color of state law. *See* 42 U.S.C. § 1983. Plaintiffs allege that Dr. Garthe acted under color of state law when he ordered A.C.'s examination, including the CT scan and full-body X-rays. *See* Compl. ¶¶ 55–60.

"The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Courts may treat the action of a private entity as an act of the state government "only if there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

To determine whether a private party is a state actor under § 1983, the Ninth Circuit recognizes four tests: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). However, "compliance with

generally applicable laws" cannot "convert private conduct into state action" under any of these tests. *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1013 (9th Cir. 2020) (citing cases).

Plaintiffs allege that Dr. Garthe has a "contractual obligation" with the City of Bend to "examine[] children who may have been victims of abuse, review[] the medical records and other pertinent documents, and form[] an opinion about the nature of their injuries." Compl. ¶ 56. "He does not maintain a pediatric practice and does not treat pediatric patients outside of the context of child abuse investigations." *Id.* ¶ 57. He conducts investigatory examinations not "in his capacity as a physician," but rather "because a State-created and State-controlled framework mandates that he do so." *Id.* ¶ 58.

Where a medical provider is not providing medical treatment but instead "exercise[es] its discretion to collaborate with . . . government in the laudable endeavor of investigating child abuse, a potential crime[,]" that provider is considered a state actor because the provider "assists the state in carrying out a governmental function[.]" *N.L. by & through Arce v. Childrens Hosp. Los Angeles*, 711 F. App'x 433, 434 (9th Cir. 2018) (citing *West*, 487 U.S. at 54–55); *see also Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (a private defendant who is a "willful participant in joint action with the State or its agents" is a state actor).

Here, Plaintiffs allege that Dr. Garthe conducted the investigatory physical examinations of A.C. in his capacity as a party contracted with and authorized by the City of Bend to provide Karly's Law examinations, not in his capacity as an

Emergency Department physician. A.C. arrived at the ED because he was ordered there as part of a Karly's Law investigation, not because he suffered illness or injury for which he sought medical treatment. "It is the physician's *function* while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law." *West*, 487 U.S. at 55–56 (emphasis added). Here, Dr. Garthe's function was to fulfill his contractual obligation to the City of Bend to conduct an examination as part of a Karly's Law investigation. For that reason, the Court concludes that Dr. Garthe was a state actor when he ordered the investigatory physical examinations of A.C.

### 2.    *Constitutional Deprivation*

As noted above, Plaintiffs allege that Dr. Garthe violated A.C.'s Fourth Amendment protection against unreasonable search and seizure (First Claim); A.C.'s and his parents' substantive Fourteenth Amendment rights of familial association (Second Claim); and A.C.'s and his parents' Fourteenth Amendment procedural due process rights (Third Claim) by ordering A.C. to undergo an "investigatory physical exam" absent parental consent, exigent circumstance, or court order. Compl. ¶¶ 61–62.

"[T]he Constitution assures parents that, in the absence of parental consent, physical examinations of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an examination

Page 11 – OPINION & ORDER

exist and that the administration of the procedure is reasonable under all the circumstances." *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000) (brackets omitted). Such compelled investigatory physical examinations of a child—absent parental consent, exigent circumstance, or court order—violate a child's Fourth Amendment protections against unreasonable search and seizure. *See Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018) (explaining that "children possess a Fourth Amendment right to 'be secure in their persons . . . against unreasonable searches and seizures'" and holding that investigatory physical examinations "are well within the ambit of the Fourth Amendment"). Such compelled physical examinations may also violate a child and parents' Fourteenth Amendment right of familial association. *See Wallis*, 202 F.3d at 1141 ("The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state. Barring a reasonable concern that material physical evidence might dissipate . . . or that some urgent medical problem exists requiring immediate attention, the state is required to notify parents and to obtain judicial approval before children are subjected to investigatory physical examinations."). The Fourteenth Amendment right of familial association "has both substantive and procedural components, thus placing a high burden of proof on the state and guaranteeing parents 'fundamentally fair procedures' before the 'state interven[es] into ongoing family affairs.'" *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 798 (9th Cir. 2024) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)).

Page 12 – OPINION & ORDER

Here, Plaintiffs sufficiently allege that when Dr. Garthe ordered a CT and full body x-rays of A.C. absent parental consent, exigent circumstance, or court order, he deprived A.C. of his Fourth Amendment protection from unreasonable search and seizure, and all Plaintiffs of their Fourteenth Amendment rights to familial association and procedural due process.

### 3. *Good Faith Defense*

Dr. Garthe contends that he is entitled to an affirmative defense of good faith ("good faith immunity") because he acted in good faith under the "direction or control" of government actors. Garthe Mot. at 7 (citing *Clement v. City of Glendale*, 518 F.3d 1090, 1096–1097 (9th Cir. 2008)).

Dr. Garthe, as a private party, is not entitled to qualified immunity from suit. "That both public and private parties may be state actors under § 1983 does not mean the law treats them equivalently in every respect." *Est. of Esche v. Bunuel-Jordana*, 152 F.4th 1185, 1193 (9th Cir. 2025). "[T]he Supreme Court has granted to public-official defendants a qualified immunity from suit under § 1983[] but has refused to extend this qualified immunity to most private-party defendants." *Id.* This is so because "[q]ualified immunity . . . serves to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Id.* (internal citation and quotation marks omitted). The Ninth Circuit has likewise "concluded that a variety of private § 1983 defendants who meet the state-actor criteria are nonetheless ineligible for qualified immunity." *Id.* at 1194; *see also, e.g., Jensen v. Lane Cnty.*,

222 F.3d 570, 580 (9th Cir. 2000) (denying qualified immunity to private physician who functioned as state actor).

Though qualified immunity is unavailable to private defendants in § 1983 suits, "courts have . . . held open the possibility that private defendants may assert a 'good faith' defense to a section 1983 claim." *Clement*, 518 F.3d at 1097. Dr. Garthe contends that he is entitled to a good faith defense because like the defendant in *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008), he "did [his] best [to] follow the law and had no reason to suspect that there would be a constitutional challenge to [his] actions." Garthe Mot. at 7 (quoting *Clement*, 518 F.3d at 1097). "Ordinarily affirmative defenses may not be raised by [a] motion to dismiss, but this is not true when . . . the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (citing C. Wright & A. Miller, *Federal Practice and Procedure,* § 1277, at 328–30).

Here, however, Plaintiffs raise several factual disputes related to Dr. Garthe's good faith defense. Pl. Resp. at 6, ECF No. 36. First, Plaintiffs dispute that Dr. Garthe acted under the "direction or control" of Officer Avery. Plaintiffs contend that Dr. Garthe made the decision to conduct a CT and full body x-rays of A.C. "on his own initiative using his own judgment." *Id.* at 6, 8, 9, 21. Plaintiffs contend that Karly's Law requires a "medical assessment" (defined as a "complete physical exam") only if there is a "suspicious physical injury" and "reasonable suspicion that the injury is or may be the result of abuse[.]" *Id.* at 13 (quoting Karly's Law, ORS 419B.023(2)(a);

Page 14 – OPINION & ORDER

ORS 418.782(5)).[2]  Plaintiffs maintain both that there was insufficient evidence to support reasonable suspicion, and that Karly's Law does not contemplate, given the facts of this case, that a "complete physical exam" include a CT and full body x-rays of a one-year-old child.  *Id.*

Second, Plaintiffs contend that even if Dr. Garthe had acted under the "direction or control" of Officer Avery, he had reason to suspect that his actions could be subject to constitutional challenge.  *Id.* at 8–9.  Dr. Garthe maintains that "[he] was trained in medicine, not legal concepts like reasonable suspicion, probable cause, exigent circumstances, warrant requirements, etc."  Garthe Mot. at 10.  But Plaintiffs cite several § 1983 cases in which courts determined that a "reasonable physician" should be expected to know that conducting an "invasive body search" without consent or court order is unconstitutional.  *See, e.g.*, *Rodriques v. Furtado*, 950 F.2d 805, 815 (1st Cir. 1991) (holding that a physician is required "to learn the

---

[2] Under Karly's Law, "[s]uspicious physical injury" includes "[b]ruising, swelling or abrasions on the head, neck or face." ORS 419B.023(1)(c)(C).  Once the investigating agency has determined that a medical assessment is warranted, it must make a "reasonable effort to locate a designated medical professional."  ORS 419B.023(4)(a).  But if such professional is not available to conduct the medical assessment in 48 hours, "the child shall be evaluated by an available [licensed] physician[.]"  *Id.*  "If the child is evaluated by a health care provider . . . other than a designated medical professional, the health care provider shall make photographs, clinical notes, diagnostic and testing results and any other relevant materials available to the designated medical professional for consultation within 72 hours following evaluation of the child."  ORS 419B.023(4)(b).  "Medical assessment" means "the taking of a child's thorough medical history and a complete physical examination of the child, for the purpose of making a medical diagnosis[.]" ORS 418.782(5).
Plaintiffs allege that the "designated medical professional" in Deschutes County is the KIDS Center in Bend.  Compl. ¶ 25.

constitutional requirements of invasive body searches"); *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 55 (1st Cir. 2009) ("[P]hysicians asked to perform invasive body searches should not comply uncritically with the requests of prison officials and thereby become complicit in depriving prisoners of their constitutional rights."); *Young v. Gila Reg'l Med. Ctr.*, 495 P. 3d 620, 629 (N.M. App. 2020) (rejecting that "as a physician and 'a non-expert in the law,'" the defendant "could not be expected to know" that he could not conduct a digital rectal exam or ultrasound on an arrestee at the behest of law enforcement without a warrant authorizing such search). The cases that Plaintiffs cite involve assertions of qualified immunity by private physicians who functioned as state actors. Even though qualified immunity is not the issue here, the cases speak to the related question of whether Dr. Garthe had any reason to suspect that there could be a constitutional challenge to his actions.

Dr. Garthe relies on *Clement* for his good faith defense, but *Clement* is distinguishable from the facts here. In *Clement*, the court determined that the defendant towing company was entitled to a good faith defense from a § 1983 claim because the towing of the plaintiff's car "appeared to be permissible under both local ordinance and state law" and "[t]he constitutional defect—a lack of notice to the car's owner—could not have been observed by the [defendant] towing company[.]" *Clement*, 518 F.3d at 1097. The court held that the constitutional injury was caused not by any "act or omission by the towing company[,]" but by the police, who failed to provide a towing notice to the plaintiff. *Id.* Here, in contrast, Plaintiffs contend that Doctor Garthe himself caused the constitutional defect. "Officer Avery did not

direct Dr. Garthe to x-ray and scan Plaintiff A.C. . . . . The decision to elevate the investigatory medical exam to a more heighted and invasive level was based on Dr. Garthe's own unreasonable misunderstanding of Karly's Law." Pl. Resp. at 13, ECF No. 36. Plaintiffs maintain that there was little, if any, visible facial bruising, and no other signs of injury to A.C.; that Mrs. Connolly offered date and time-stamped evidence of how the accident occurred; and that Mrs. Connolly did not consent to the examinations.

In sum, because the assertion of a good faith defense raises issues of disputed fact, the Court may not consider it in a motion to dismiss. Further, Plaintiffs have sufficiently alleged the § 1983 claims against Dr. Garthe. Accordingly, the Court denies Dr. Garthe's Motion to Dismiss the § 1983 claims against him.

B.      *State-law Claims against Dr. Garthe and COEP*

Plaintiffs allege seven state-law claims (Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Claims) against Dr. Garthe and against his employer, COEP. *See* Compl. ¶¶ 143, 153, 164, 173, 182, 188, 194).

Defendants move to dismiss the state-law claims first for lack of subject matter jurisdiction under Rule 12(b)(1) for failure to provide proper notice under the Oregon Tort Claims Act ("OTCA"). St. Charles Mot. at 5, 21; Garthe Mot. at 2 ("join[ing] St. Charles' motion and incorporat[ing] the points and authorities set forth by St. Charles as though fully set forth herein"). Alternatively, Defendants move to dismiss each of alleged torts for failure to state a claim under Rule 12(b)(6). Garthe Mot. at 10.

Page 17 – OPINION & ORDER

1.    *Oregon Tort Claims Act*

Defendants contend that the OTCA applies to the state tort claims against them and that the Court should dismiss those claims for lack of subject matter jurisdiction because Plaintiffs failed to provide proper Tort Claim Notice as required under the OTCA.  St. Charles Mot. at 21.

The OTCA provides that "every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties[.]"  ORS 30.265(1).  OTCA thus provides "personal immunity" to agents of a public body acting within the scope of their employment or duties.  *See Ackerman v. OHSU Med. Grp.*, 233 Or. App. 511, 519 (2010).

Plaintiffs contend that the OTCA does not apply because Dr. Garthe was not an employee of the City of Bend; he was an "independent contractor" for purposes of conducting Karly's Law exams, and "COEP is a private physician group that provides emergency medical services pursuant to contract[,] not a public entity."  Pl. Resp. at 6, ECF No. 36.  Whether state tort claims against Dr. Garthe and COEP fall under the OTCA depends on whether Dr. Garthe acted as an agent of the City of Bend.  The test for agency under the OTCA differs from the tests for state action under § 1983.  Under the OTCA, an agency relationship exists where "agents [are] subject to the control of their principal with respect to the 'physical details' of [the] conduct" that gives rise to the alleged tort.  *Ackerman*, 233 Or. App. at 520.  Defendants contend that Plaintiffs allege an agency relationship between Dr. Garthe and the City of Bend because "[t]hey allege [that] his examination was not a private medical function, but

Page 18 – OPINION & ORDER

rather a 'necessary component[] of a comprehensive government framework for investigating and resolving cases.'" Garthe Reply at 15–16 (quoting Compl. ¶ 60), ECF No. 40.

However, without more, the existence of a contract to investigate and resolve cases is insufficient to show an agency relationship. *See Vaughn v. First Transit, Inc.*, 346 Or. 128, 136 (2009) ("Agency does not result, for example, when an individual (or entity) simply agrees to provide services for another, even if the other person— through contract—is able to establish general standards for performance and in that way 'control' the individual. That individual simply may be a contractor performing services for another, and not an 'agent' at all."). An agency relationship exists only where the principal has "the right to control the physical details of the manner of performance of the conduct giving rise to the tort[]." *Ackerman*, 233 Or. App. at 520. Further, "[t]he power to give *interim* instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Vaughn*, 346 Or. at 136 (emphasis added by *Vaughn*) (quoting Restatement (Third) of Agency § 1.01 comment f (2006)).

Plaintiffs allege that Dr. Garthe ordered the CT and full body x-rays of his own accord and thus independently determined how to fulfill his contractual Karly's Law obligation with the City of Bend. Given these facts, Dr. Garthe did not act as an agent of the City of Bend when he ordered A.C.'s examinations, the act that gave rise to the alleged torts. For that reason, the OCTA does not apply to the state tort claims against Dr. Garthe and COEP.

Page 19 – OPINION & ORDER

### 2.   *State Tort Claims*

Plaintiffs bring seven Oregon tort claims against Dr. Garthe and his employer, COEP.  Defendants move to dismiss each of the state tort claims against them for failure to state a claim under Rule 12(b)(6).  Garthe Mot. at 10.

### a.   *False Imprisonment (Seventh Claim)*

A.C. brings a false imprisonment claim against Dr. Garthe and COEP.  False imprisonment is "the unlawful imposition of restraint on another's freedom of movement."  *Buckel v. Nunn*, 133 Or. App. 399, 405, 891 P.2d 16, 21 (1995) (quoting *Walker v. City of Portland*, 71 Or. App. 693, 697 (1985)).  In Oregon, the elements of false imprisonment are:  (1) the defendant must confine the plaintiff; (2) the defendant must intend the act that causes the confinement; (3) the plaintiff must be aware of the confinement; and (4) the confinement must be unlawful.  *Hiber v. Creditors Collection Serv., Inc.*, 154 Or. App. 408, 413, *rev. den.*, 327 Or. 621 (1998).  "Restraint may be accomplished by actual or apparent physical barriers, compulsive physical force, a threat to apply physical force, or assertion of legal authority."  *Buckel*, 133 Or. App. at 405.  "Restraint need not be for more than a brief time."  *Id.*

Plaintiffs allege that A.C. was falsely imprisoned by Dr. Garthe at St. Charles Emergency Department "to undergo the compelled investigatory Karly's Law examination."  Compl. ¶ 144.  Plaintiffs allege that Dr. Garthe confined A.C. "within fixed boundaries" to conduct the examinations; that Dr. Garthe intended to confine A.C.; that A.C. was aware of the confinement; and that the confinement was "without consent" and "was not otherwise legally justified."  Compl. ¶¶ 143–148.

Unlawful confinement may be caused not only by physical restraint, but by the assertion of legal authority or a "reasonable apprehension that force will be used to effect a confinement[.]" *Roberts v. Coleman*, 228 Or. 286, 293, 295 (1961).  Plaintiffs allege that Officer Avery ordered the Connolly parents to take A.C. to the St. Charles Emergency Department.  Compl. ¶¶ 36–44, 64.  Plaintiffs allege that the Connolly parents objected to having to take A.C. to the St. Charles Emergency Department, Compl. ¶¶ 25–29, and objected to the examinations, *id.* ¶¶ 37–40, and that, during the CT scan, Mrs. Connolly tried "to intervene to stop the [CT] scan and retrieve her son," but was prevented from doing so.  *Id.* ¶ 42.

Dr. Garthe contends that Plaintiffs do not allege that "[he] ever took a deliberate act to confine A.C."  Garthe Mot. at 11.  Plaintiffs respond that Dr. Garthe "prolonged[,]" "intensified[,]" and "escalated [the confinement's] intrusiveness by ordering CT scans and x-rays without lawful justification[,]" even "after reviewing the text [evidence]," absence of "factual basis for A.C.'s slight bruise," and absence of parental consent.  Pl. Resp. at 14, ECF No. 36.  Dr. Garthe does not dispute that he deliberately ordered the examinations.  And Plaintiffs sufficiently allege that the testing confined A.C. to the hospital and that his mother believed that she was not free to leave or to refuse the examinations that were conducted despite her objections.

Dr. Garthe also contends that any imprisonment was not false because there was a "true reason" for it—it was required by Karly's Law.  Garthe Mot. at 11.  Plaintiffs contend that "there was no true reason for the exam (particularly Phase 2 when [Dr. Garthe] ordered CT scans and x-rays)" because Dr. Garthe ordered the

Page 21 – OPINION & ORDER

examinations on his own initiative.  Pl. Resp. at 14 n.6 (citing Compl. ¶¶ 36, 37), ECF No. 36.  Given the allegations, which the Court must accept as true and view in the light most favorable to Plaintiffs, Dr. Garthe lacked legal justification for the confinement.

Plaintiffs thus sufficiently allege the tort of false imprisonment against Dr. Garthe.  And because Plaintiffs allege that Dr. Garthe committed the act in the course of his employment with COEP, Compl. ¶ 149, Plaintiffs also state a false imprisonment claim against Dr. Garthe's employer, COEP.

> b.     *Battery (Eighth Claim)*

A.C. brings a battery claim against Dr. Garthe and COEP.  In Oregon, the tort of battery is a voluntary act that is intended to cause a contact that is *either* harmful *or* offensive.  *Ballard v. City of Albany*, 221 Or. App. 630, 640–41, (2008) (emphasis added) (quoting *Walthers v. Gossett,* 148 Or. App. 548, 552 (1997)).  An "[o]ffensive contact" is defined as "contact that offends a reasonable sense of personal dignity." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 330 (2013) (quoting *Restatement (Second) of Torts* §§ 18(1), 19 (1965)).  "Consequently, the actionable touching need not be physically harmful if it is offensive . . . and the requisite scienter is the intent to engage in such offensive contact, and not the intent to cause physical harm from such contact." *Johnson v. Jones*, 269 Or. App. 12, 17 (2015).

Plaintiffs allege that Dr. Garthe "intentionally made contact" with A.C. when he "conduct[ed] the investigatory physical medical examination[;]" that he "caused offensive contact to be made" by ordering the imaging examinations; that A.C's

Page 22 – OPINION & ORDER

parents did not consent to the contact; and that the contact was "offensive to a reasonable person." Compl. ¶¶ 154–157. Plaintiffs contend that the unconsented contact was "offensive to a reasonable person" because it "violated a reasonable sense of personal dignity." Pl. Resp. at 16–17, ECF No. 36. Plaintiffs also contend that although the Connolly's presence in the Emergency Department "could be construed as implicit consent," they withdrew any consent when "they told staff there was no legal basis for the exam and that they objected to it being performed—especially, with regard[] to the CT scans and x-rays." *Id.*

Dr. Garthe argues that Plaintiffs do not allege that he made any physical contact with A.C. Garthe Mot. at 12. A defendant may be "held liable for battery under an 'aiding and assisting' theory" where the defendant "participated in, aided or procured the battery, and acted with the requisite mental state of intending to cause" the contact. *Ballard*, 221 Or. App. at 640–41. Dr. Garthe does not dispute that he ordered the CT and full-body x-rays that Plaintiffs contend were the sources of the offensive contacts. Dr. Garthe thus intentionally caused the allegedly offensive contact to be made.

Plaintiffs sufficiently allege the tort of battery against Dr. Garthe. And because Plaintiffs also allege that Dr. Garthe committed the act in the course of his employment with COEP, Compl. ¶ 160, Plaintiffs state a battery claim against Dr. Garthe's employer, COEP.

　　　　　c.　　*Assault (Ninth Claim)*

Page 23 – OPINION & ORDER

A.C. brings an assault claim against Dr. Garthe and COEP. *See* Compl. ¶¶ 164–170. Mrs. Connolly alleges an assault claim against COEP.

In Oregon, the tort of assault occurs where (1) a person acts, intending to either; (2) cause harmful or offensive contact with another person or to cause another person apprehension of imminent harmful or offensive contact with that other person; and (3) the other person reasonably believes a harmful or offensive contact would occur. *Underwood v. City of Portland*, 319 Or. App. 648, 656 (2022) (citing *Cook v. Kinzua Pine Mills Co. et al.*, 207 Or. 34, 47 (1956) and *Restatement (Second) of Torts* § 21 (1965)); *see also McLean v. Pine Eagle Sch. Dist.*, *No. 61*, 194 F. Supp. 3d 1102, 1122 (D. Or. 2016) ("A claim for civil assault has two elements: (1) the defendant intended to either cause a harmful or offensive contact with the plaintiff[] or cause the plaintiff apprehension that the defendant was going to cause an imminent harmful or offensive contact with the plaintiff; and (2) the plaintiff reasonably believed a harmful or offensive contact would occur."). Assault is "an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect." *Bollaert v. Witter*, 101 Or. App. 654, 658 (1990) (quoting *Cook*, 207 Or. at 47–48).

Plaintiffs allege that Dr. Garthe ordered an assault on A.C. when he "compelled" the investigatory physical examinations of A.C., which led hospital personnel to restrain A.C. for the imaging procedures. *See* Compl. ¶¶ 164–167, 170.

Accepting Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, the Court cannot conclude that Dr. Garthe intended to do

violence to A.C. *See, e.g., Johns v. Nestucca Rural Fire Prot. Dist.*, No. CV05-1744-HU, 2007 WL 429111, at *6 (D. Or. Feb. 2, 2007) (explaining that defendant's words, "'you're not going anywhere until this meeting is over,' coupled with an invasion of another's 'personal space,' and throwing a letter, without more, do not constitute an intentional attempt to do violence."). For that reason, Plaintiffs fail to allege an assault claim against Dr. Garthe.

Mrs. Connolly alleges an assault claim against Doe Defendants and COEP, but not Dr. Garthe. Doe Defendants are not alleged to be employed by COEP. Mrs. Connolly's assault claims against Doe Defendants and their employer, St. Charles, are discussed below. Accordingly, the Court dismisses both A.C's assault claim against Dr. Garthe and his employer, COEP, and Mrs. Connolly's assault claim against COEP and grants Plaintiffs leave to amend.

> d. *Intentional Infliction of Emotional Distress ("IIED")*
> *(Tenth Claim)*

A.C. alleges an IIED claim against Dr. Garthe and COEP.

In Oregon, an IIED claim must allege "(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct, *i.e.,* conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress." *House v. Hicks*, 218 Or. App. 348, 357–58 (2008).

Plaintiffs allege that, by ordering the investigatory physical examination of A.C., Dr. Garthe "acted with the intent to cause emotional distress or with reckless

Page 25 – OPINION & ORDER

disregard of the likelihood that such distress would result from [his] conduct[;]" that Dr. Garthe's actions were "extreme and outrageous[;]" and that A.C. experienced emotional distress "so severe that no reasonable person could be expected to endure it." Compl. ¶¶ 174–177.

Where a special relationship exists, the intent element is met where a defendant "acted volitionally with knowledge that his actions would cause the distress." *Torgeson v. Connor*, 86 Or. App. 179, 182–83 (1987). Here, Dr. Garthe, as the examining physician, had a physician-patient relationship with A.C. and his parents and thus had a special relationship with them.

But "proof of this tort largely turns on the second element, whether a defendant's conduct is sufficiently outrageous." *House*, 218 Or. App. at 358. Under Oregon law, "a trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *Id.* Extreme and outrageous conduct is a high bar that "exceeds any reasonable limit of social toleration[.]" *Id.* Whether conduct is "outrageous" or "extraordinarily beyond the bounds of socially tolerable behavior" is a case-by-case fact-specific inquiry based on the totality of the circumstances. *Id.* Outrageous conduct typically involves "acts of psychological and physical intimidation, racism, or sexual harassment." *Davis v. Pac. Saw & Knife Co.*, No. 08-676-HU, 2008 WL 4319981, at *3 (D. Or. Aug. 27, 2008); *see also Clemente v. State*, 227 Or. App. 434, 442–43 (2009) (explaining that to prevail in an IIED claim, a plaintiff must typically

Page 26 – OPINION & ORDER

allege an aggravating factor such as "unwanted physical contact of a sexual or violent nature"). Further, Oregon courts have determined that "the illegality of conduct is relevant to, but not determinative of, whether the conduct is sufficiently outrageous to support an IIED claim." *House*, 218 Or. App. at 359.

Here, Plaintiffs allege no facts to support that Dr. Garthe would have conducted himself differently had the Connolly parents approved of the procedures, which, by nature, are extremely distressing to young children. The conduct was outrageous because it occurred without consent and allegedly was outside the Karly's Law framework. But A.C.'s distress was not caused by the outrageous nature of the conduct because he could not have known that the procedures were unconsented and outside the Karly's Law framework. His distress was caused by separation from his mother and being restrained and subjected to the procedures. And even though Dr. Garthe may have acted outside the Karly's Law framework, the Court cannot conclude that his actions "exceeded the bounds of socially tolerable behavior." Accordingly, the Court dismisses Plaintiffs' IIED claim against Dr. Garthe and COEP and grants Plaintiffs leave to amend.

e.    *Negligence & Gross Negligence (Eleventh & Twelfth Claims)*

All Plaintiffs bring negligence and gross negligence claims against Dr. Garthe and COEP. As to negligence, Plaintiffs allege that "Defendants owed Plaintiffs a duty of care;" that Defendants "breached that duty" and "unreasonably created the risk that Plaintiffs would be harmed through their conduct[,]" causing "serious emotional distress" and "infring[ing] on Plaintiff's legally protected interests[.]" Compl. ¶¶ 183–

Page 27 – OPINION & ORDER

185. Plaintiffs' claim for gross negligence is similarly threadbare. *See id.* ¶¶ 189–192.

Defendants contend that Plaintiffs fail to provide factual allegations to support their negligence and gross negligence claims. Garthe Mot. at 16–17. The Court finds that Plaintiffs' allegations merely recite the elements of their causes of action. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 at 555. For that reason, the Court dismisses Plaintiffs' negligence claims against Dr. Garthe and COEP and grants Plaintiffs leave to amend.

f.      *Medical Malpractice (Thirteenth Claim)*

A.C. alleges that Dr. Garthe committed medical malpractice by ordering "unnecessary and excessive imaging" of A.C., and by "failing to adjust procedures for a child patient." Compl. ¶ 197.

In Oregon, [t]he elements of a claim for medical malpractice are: (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) harm that is measurable in damages; and (4) a causal link between the breach and the harm. *Rustvold v. Taylor*, 171 Or. App. 128, 132 (2000).

Plaintiffs allege that Dr. Garthe had a "professional duty of care" to A.C.; that Dr. Garthe breached that duty when he deviated from the standard of care; and that Dr. Garthe caused A.C. harm by "unnecessarily expos[ing] [A.C.] to radiation and

Page 28 – OPINION & ORDER

trauma[;]" and by causing "actual harm, including pain and suffering, emotional distress, and additional medical costs." Compl. ¶¶ 195–200.

"In most medical malpractice cases, expert testimony is required to establish the standard of care," *Trees v. Ordonez*, 354 Or. 197, 207 (2013), which is "that degree of care, skill and diligence that is used by ordinarily careful physicians . . . in the same or similar circumstances in the community of the physician . . . or a similar community[,]" *id.* (quoting ORS 677.095(1)). Plaintiffs allege that "[t]he American College of Radiology (ACR) recommends that CT scans be used only when clearly indicated and alternatives like ultrasound or MRI are not appropriate[,]" and that ACR and the Society for Pediatric Radiology, among other professional organizations, "urge[] extreme caution in pediatric imaging" due to "the significantly higher radiation sensitivity to young children." Compl. ¶ 196. Further, Plaintiffs cite medical studies that link pediatric radiation exposure to increased cancer risk. *Id.*

Defendants move to dismiss the medical malpractice claim for, among other things, the failure to allege legally cognizable damages. Garthe Mot. at 20. Plaintiffs do not contend that A.C. suffered present physical harm from the allegedly unnecessary radiation exposure; Plaintiffs allege that A.C. suffers a threat of future physical harm from that exposure—an increased risk of future cancer. But "a threat of future physical harm is not, in itself, actionable." *Smith v. Providence Health & Servs.-Oregon*, 361 Or. 456, 465 (2017) (citing *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 408 (2008)). A threat of future physical harm coupled with emotional distress over that harm may be actionable. *See id.* But Plaintiffs do not and cannot allege

Page 29 – OPINION & ORDER

that A.C. experiences emotional distress over a future increased risk of cancer because, at 19 months of age, he is unaware of that risk. Finally, in Oregon, the threat of future additional medical costs, including the costs of medical monitoring, is also not actionable absent present injury. *Lowe*, 344 Or. at 415.

For those reasons, the Court dismisses Plaintiffs' medical malpractice claim against Dr. Garthe and COEP and grants Plaintiffs leave to amend.

### g.    *Punitive Damages*

Plaintiffs seek punitive damages on all state tort claims except the negligence and gross negligence claims. Defendants move to dismiss Plaintiffs' punitive damages claims because the award of punitive damages is barred under the OTCA. Garthe Mot. at 21. As explained above, the OTCA does not apply here. The Court denies Defendants' Motion to Dismiss the punitive damages claim on any relevant surviving tort claims.

## II.    *St. Charles and DOES 1–10*

Plaintiffs bring federal and state-law claims against Doe Defendants 1–10 and their employer, St. Charles.

### A.    *Section 1983 Claims against Does 1–10 and St. Charles*

Plaintiffs allege that by participating in the investigative physical exam of A.C. absent parental consent, exigent circumstance, or court order, unnamed St. Charles employees, Does 1–10, violated Plaintiffs' Fourth and Fourteenth Amendment rights (First, Second, and Third Claims). Compl. ¶¶ 61–102; Pl. Resp. at 5, ECF No. 37. Plaintiffs' Fourth Claim alleges "Supervisory Liability" as to unspecified "supervisory

Page 30 – OPINION & ORDER

[Doe] defendants" for depriving Plaintiffs of their Fourth and Fourteenth Amendment rights. *Id.* ¶¶ 103–116. And Plaintiffs' Fifth Claim alleges *Monell* liability as to St. Charles. *Id.* ¶¶ 117–134.

### 1. *Section 1983 Claims against Does 1–10*

Plaintiffs allege that Doe Defendants are subject to § 1983 liability for participating in the invasive investigatory examinations of A.C. absent parental consent, exigent circumstance, or court order. Plaintiffs allege that "Does 1–10 are currently unidentified medical personnel, including CT scan technicians, x-ray technicians, nurse, and staff members at St. Charles Hospital" who "were at all times acting within the course and scope of such relationship(s), and at all times acted under color of law." Compl. ¶ 11.

Defendants move to dismiss the Section 1983 claims against Does 1–10 because Plaintiffs fail to allege facts showing that "Does 1–10 acted under color of state law" and that "their conduct resulted in the deprivation of a constitutional right[.]" St. Charles Mot. at 7. Defendants also contend that Doe Defendants are entitled to good faith immunity from § 1983 liability. *Id.* at 11.

Plaintiffs allege that Doe Defendants "complicitly participated in the invasive second phase of the unconstitutional examination" of A.C. Pl. Resp. at 6, ECF No. 37. Plaintiffs allege that Doe 1, a "staffer" that assisted with the CT scan, blocked Mrs. Connolly when she "attempted to intervene to stop the scan and retrieve her son." Compl. ¶ 42. Plaintiffs allege that Doe 1 "made physical contact with [her,]" "moved within inches of [her] face[,]" physically blocked her, and "stat[ed] 'two more

minutes' in a confrontational tone." *Id.* Plaintiffs also allege that "Doe Defendants immobilized [A.C.'s] body in a blanket straight jacket and wrapped tape-wrap around his forehead to the board multiple times[,]" *id.* ¶¶ 41–42; that "two hospital staffers" restrained A.C. for the CT scan, *id.* ¶ 42, that Doe Defendants "failed to adjust the radiation dose for pediatric use, applying adult-level exposure to a 19-month-old-child[,]" *id.* ¶ 44; and that a "Doe Defendant nurse" told Mrs. Connolly that she and A.C. "were not allowed to leave the facility until the results of the imaging tests were received[,]" *id.* ¶ 46.

Plaintiffs do not allege facts necessary to determine whether Doe Defendants or their employer St. Charles functioned as state actors. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961).

Plaintiffs' Fourth Claim alleges supervisory liability under § 1983 as to unnamed Doe Defendants. *See* Compl. ¶¶ 103–116. Supervisors are liable under § 1983 only where they have "personal involvement in the constitutional deprivation" or a "sufficient causal connection between [their] wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

Here, Plaintiffs allege that supervisory Doe Defendants "acted under color of state law;" that their acts and omissions deprived Plaintiffs of rights under federal law or the Constitution; that they "directed [a] subordinate in the acts and failures to

act" that violated Plaintiffs' rights; that they "set in motion a series of acts by [the] subordinate or knowingly refused to terminate a series of acts by [the] subordinate, that they knew or should have known" would violate Plaintiffs' rights; that they "disregarded the known or obvious consequence that a particular training deficiency or omission would cause [the] subordinates to violate" Plaintiffs' rights.  Compl. ¶¶ 106–110.  Nowhere do Plaintiffs allege any specific facts to support their conclusory recital of the action's elements.  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness*, 590 F.3d at 812.

In sum, Plaintiffs do not sufficiently allege that St. Charles (or its employees) functioned as state actors.  The Court does not reach the issue of whether Does deprived Plaintiffs of their constitutional rights or whether they are entitled to a good faith defense.  Further, Plaintiffs do not adequately allege supervisory liability for relevant Doe Defendants because they provide no factual support for their allegations.  For those reasons, the Court dismisses Plaintiffs' § 1983 claims against Doe Defendants and grants Plaintiffs leave to amend their Complaint.

### 2.    *Monell Claim against St. Charles*

Plaintiffs' Fifth Claim alleges § 1983 *Monell* liability against St. Charles on the basis of "official policy or widespread or longstanding practice" and failure to train. Compl. ¶¶ 117–134.  Plaintiffs allege that St. Charles has a constitutionally deficient policy or practice of "conducting investigatory physical examinations if a child exhibits signs of an injury. *Id.* ¶¶ 129, 132.  They allege that, "still today . . . [St.

Charles] operates under the legal fallacy that children are compelled to undergo an investigatory physical examination so long as the child exhibits a sign of injury." *Id.* ¶ 122. And they allege that St. Charles has failed to train its employees "to identify rights afforded to parents who object to orders by police officers to submit to a compelled investigatory physical examination." *Id.* ¶ 123.

St. Charles contends that Plaintiffs do not sufficiently allege a *Monell* claim because St. Charles is a private entity not subject to § 1983 liability and because Plaintiffs do not otherwise allege facts to support the elements of a *Monell* claim. St. Charles Mot. at 9.

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), "[m]unicipalities are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents, however." *Id.* "Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." *Id.*

To prevail on a *Monell* claim, a plaintiff must show that (1) the plaintiff was deprived of a constitutional right; (2) the entity, acting under color of state law, had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernadino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). A *Monell* claim can also be based on policy, custom or practice, and failure

Page 34 – OPINION & ORDER

to train theories. *See, e.g., Long*, 442 F.3d at 1186 ("A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact.").

*Monell* claims can be made against private entities where a plaintiff shows that the entity satisfies one of the Ninth Circuit's four state action tests. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140–41 (9th Cir. 2012). Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton*, 192 F.3d at 835. To avoid dismissal, the plaintiff must allege facts to support that, under one of the state action tests, a defendant functioned as a state actor. *Caviness*, 590 F.3d at 808, 818.

Here, Plaintiffs bring a *Monell* claim against St. Charles, a private entity. But Plaintiffs do not allege sufficient facts to show that St. Charles functioned as a state actor. *See* Compl. ¶¶ 55–60. For that reason, Plaintiffs' *Monell* claim fails. Accordingly, the Court dismisses Plaintiffs' § 1983 Monell claim against St. Charles and grants Plaintiffs leave to amend their Complaint.

B.    *State-law Claims against Does 1–10 and St. Charles*

Plaintiffs bring state tort claims against unnamed St. Charles employees, Does 1–10, for false imprisonment (Seventh Claim), battery (Eighth Claim), assault (Ninth Claim), negligence (Eleventh Claim), gross negligence (Twelfth Claim), and medical malpractice (Thirteenth Claim). Plaintiffs bring state tort claims against St. Charles for negligence (Eleventh Claim) and gross negligence (Twelfth Claim).

1.    *Oregon Tort Claims Act*

Defendants move to dismiss the state-law claims for lack of subject matter jurisdiction under Rule 12(b)(1) for failure to provide proper Tort Claim Notice under the OTCA.  St. Charles Reply at 2, ECF No. 39; *see* Fed. R. Civ. P. 12(b)(1).  Plaintiffs respond that the OTCA does not apply here.

Whether the OTCA applies to the torts alleged against Doe Defendants depends on whether Doe Defendants, who are employed by St. Charles, a private entity, acted as agents of the City of Bend.  Plaintiffs contend that Doe Defendants are not agents of the City of Bend because they have not alleged that "[any] public entity exercised the requisite right of control over the manner or means of [Defendants'] conduct."  Pl. Resp. at 8, ECF No. 37.

Plaintiffs maintain that Doe Defendants 1–10 "complicitly participated" in the "invasive second phase" of the investigatory physical examination of A.C. and committed various torts while doing so.  Based on the scant allegations, the Court cannot conclude that the City of Bend had "the right to control the physical details of the manner of performance of the conduct giving rise to the [alleged] torts." *Ackerman*, 233 Or. App. at 520.  For that reason, the Court concludes that the OTCA does not apply.

2.    *Karly's Law*

Defendants next move to dismiss the state tort claims "because St. Charles and Does 1–10 were acting under the framework of Karly's Law when assisting the City of Bend in the child abuse investigation of A.C."  St. Charles Mot. at 16.  Under

Page 36 – OPINION & ORDER

Karly's Law, "[i]f a person conducting an investigation under ORS 419B.020 observes a child who has suffered suspicious physical injury and the person is certain or has a reasonable suspicion that the injury is or may be the result of abuse," they must "ensure that a designated medical professional conducts a medical assessment within 48 hours[.]"  ORS 419B.023(2).

Plaintiffs maintain that St. Charles and Does 1–10 acted outside the Karly's Law framework because there was insufficient evidence to support reasonable suspicion and because, given the facts of this case, Karly's Law does not require or contemplate that a "complete physical exam" include a CT and full body x-rays of a young child.  Pl. Resp. at 13, ECF No. 37.  In a motion to dismiss, a court must accept the plaintiff's facts as true and draw all reasonable inferences in the plaintiff's favor. Accordingly, the Court concludes that Plaintiffs sufficiently allege that Defendants acted outside the Karly's Law framework.

### 3.    *State Tort Claims*

Plaintiffs bring six Oregon tort claims against Does 1–10 and negligence claims against St. Charles.  Defendants move to dismiss each of the state tort claims against them for failure to state a claim under Rule 12(b)(6).  St. Charles Mot. at 16.

#### a.    *False Imprisonment (Seventh Claim)*

A.C. brings a false imprisonment claim against Does 1–10, but the claim lacks any factual allegations against any Doe Defendant.  *See* Compl. ¶¶ 142–152.  For that reason, Plaintiffs do not sufficiently state a false imprisonment claim against any Doe

Page 37 – OPINION & ORDER

Defendant. The Court dismisses Plaintiffs' false imprisonment claim against Doe Defendants and grants Plaintiffs leave to amend.

###### b.    *Battery (Eighth Claim)*

A.C. brings a battery claim against Does 1–10, but the claim lacks any factual allegations against any Doe Defendant. *See* Compl. ¶¶ 153–163. For that reason, Plaintiffs do not sufficiently state a battery claim against any Doe Defendant. The Court dismisses Plaintiffs' battery claim against Doe Defendants and grants Plaintiffs leave to amend.

###### c.    *Assault (Ninth Claim)*

A.C. and his mother bring two assault claims against Does 1–10. *See* Compl. ¶¶ 164–172. The standards for an assault claim under Oregon law were explained in the prior section.

First, Mrs. Connolly alleges that a St. Charles "hospital staffer" involved with the CT scan assaulted her when she "attempted to intervene to stop the scan and retrieve her son." Comp. ¶¶ 42, 168. She alleges that "[o]ne of the staffers, Doe 1, (weighing approximately 200 pounds) made physical contact" with her, and that "Doe 1 moved within inches of [her] face, and physically blocked her, while stating 'two more minutes' in a confrontational tone." *Id.* Defendants argue that Plaintiffs do not plausibly allege that Doe 1 intended to cause harmful or offensive contact but instead that his actions "reflect a reasonable and measured attempt to stop Mrs. Connolly's interference with a medical exam, not an attempt to place her in fear of violence or harm." Garthe Mot. at 14. Given the context, Mrs. Connolly alleges no

facts to support that Doe 1 acted other than to prevent interference with a radiology procedure. Mrs. Connolly does not plausibly allege that Doe 1 intended to do violence to her or that a reasonable person would have believed that violence was imminent. For that reason, the allegations, taken as true and viewed in the light most favorable to Plaintiffs, do not support that Doe 1 assaulted Mrs. Connolly.

Second, Plaintiffs allege that "two [St. Charles] hospital staffers," including Doe 1, assaulted A.C. when they "immobilized [A.C.] using a papoose-style device and head tape" to restrain A.C. for the imaging procedures. Compl. ¶¶ 42, 168. Again, given the context, Plaintiffs fail to plausibly allege that Does intended to do violence to A.C. or that a reasonable person would have believed that violence was imminent. For that reason, the allegations, taken as true and viewed in the light most favorable to Plaintiffs, do not support that Doe Defendants assaulted A.C. The Court dismisses Plaintiffs' assault claims against Doe Defendants and grants Plaintiffs leave to amend.

d.     *Negligence & Gross Negligence (Eleventh & Twelfth Claims)*

All Plaintiffs bring negligence and gross negligence claims against Does 1–10 and their employer St. Charles, but the claim lacks any factual allegations against any Doe Defendant. *See* Compl. ¶¶ 182–193. For that reason, Plaintiffs do not sufficiently state a negligence or gross negligence claim against any Doe Defendant. The Court dismisses Plaintiffs' negligence claims against Doe Defendants and St. Charles and grants Plaintiffs leave to amend.

Page 39 – OPINION & ORDER

e.      *Medical Malpractice (Thirteenth Claim)*

A.C. brings a medical malpractice claim against Does 1–10. *See* Compl. 194–201. Plaintiffs allege that "Does 1–10 breached their duty of care by (a) conducting medically unnecessary and excessive imaging; (b) failing to adjust procedures for a child patient; (c) proceeding without informed parental consent; (d) engaging in unethical and inappropriate physical restraint; (e) failing to review a warrant or court order before removing patient and parental rights."

The standards for a medical malpractice claim under Oregon law were explained in the prior section.

Here, Plaintiffs fail to state the harm that resulted from the alleged "unethical and inappropriate physical restraint." And the allegation that the St. Charles Defendants failed to review a warrant or court order falls outside the scope of a medical malpractice claim. "An action for medical malpractice will lie only for activities in which a defendant was involved in the 'practice of medicine.'" *Mindt v. Winchester*, 151 Or. App. 340, 344 (1997).

Finally, as discussed above, the damages that Plaintiffs seek are not legally cognizable. Plaintiffs do not contend that A.C. suffered present physical harm from the allegedly unnecessary and excessive radiation exposure; they allege that A.C. suffers a threat of future physical harm from that exposure—an increased risk of future cancer. Such future harm damages are not actionable in Oregon.

For those reasons, Plaintiffs fail to state a medical malpractice claim against any Doe Defendant. The Court dismisses Plaintiffs' medical malpractice claim against Doe Defendants and grants Plaintiffs leave to amend.

### f.    *Punitive Damages*

Plaintiffs seek punitive damages on all state tort claims against Does 1–10 except the negligence and gross negligence claims. Defendants move to dismiss Plaintiffs' punitive damages claims because the award of punitive damages is barred under the OTCA. St. Charles Mot. at 4. As explained above, the OTCA does not apply here. The Court denies Defendants' Motion to Dismiss the punitive damages claim on any relevant surviving tort claims.

### CONCLUSION

For the reasons explained above, Defendants Dr. Garthe's and COEP's Motion to Dismiss, ECF No. 32, is GRANTED in part and DENIED in part, consistent with this Opinion. Doe Defendants 1–10's and St. Charles' Motion to Dismiss, ECF No. 30, is GRANTED in part and DENIED in part, consistent with this Opinion. The Court grants Plaintiffs leave to amend their Complaint. Plaintiffs have 30 days from the date of this Order to amend their Complaint.

It is so ORDERED and DATED this __30th__ day of June 2026.


  /s/Ann Aiken
ANN AIKEN
United States District Judge


Page 41 – OPINION & ORDER